UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MIGUEL ALEJANDRO MONTEJO VEGA,

*Petitioner*,

v. Case No. 3:26-cv-1665-JEP-SJH

WARDEN, NORTH FLORIDA DETENTION CENTER, et al.,

*Respondents*.
_________________________________/

**ORDER**

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 on June 26, 2026. (*See generally* Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See id.* at 2, 6–8). He asks the Court to order his release. (*Id.* at 8).

The Federal Respondents filed a response in opposition to the petition. (*See generally* Doc. 4). According to the Federal Respondents, Petitioner has impeded his removal and, thus, the Court should toll the presumptively reasonable time period. (*Id.* at 5–8). The Warden filed a motion to dismiss,

arguing he is not a proper respondent in this case. (*See generally* Doc. 6). Petitioner filed a reply. (*See generally* Doc. 7). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.**

Petitioner, a citizen of Cuba, entered the United States on July 7, 2011, and was granted parole. (Doc. 4-2 at 1–2). Petitioner was subsequently convicted of several crimes. (*Id.* at 3). An immigration judge ordered Petitioner removed on November 15, 2018. (*Id.* at 2). In Fall 2025, ICE re-encountered Petitioner at a Florida prison prior to his release.[1] (*Id.*; Doc. 1 at 5; Doc. 4-4 at 1, 5–7). ICE issued to Petitioner a warning for failure to depart on March 15, 2026. (Doc. 4-6 at 1). On May 29, 2026, ICE transported Petitioner to Texas to remove him, and he "did not comply with instructions by not exiting the pod for processing for [t]hird [c]ountry [r]emoval to Mexico" and "willfully failed and refused to depart the United States to Mexico when directed to do so by a [d]eportation [o]fficer." (*Id.*).

---

[1] While Petitioner alleges that ICE re-encountered him on November 26, 2025, (Doc. 1 at 5), records that the Federal Respondents attach to their response indicate that the encounter occurred on October 25, 2025, (Doc. 4-2 at 2; Doc. 4-4 at 1, 5–7). Regardless, as the Court explains below, Petitioner was detained for over six months when he initiated this action.

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of*

*removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

## III.

Here, Petitioner was taken into ICE custody on either October 25, 2025, or November 26, 2025, and he filed this case on June 26, 2026—eight and seven months after his re-detention, respectively. (Doc. 1 at 5; Doc. 4-2 at 2; Doc. 4-4 at 1, 5–7). Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "prevented his removal by physically resisting exiting the pod and refusing to walk across the border and into Mexico." (Doc. 4 at 7).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[2] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897

[2] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

(11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701)).

In this case, this Court need not resolve whether or not Petitioner's conduct at the border would have tolled the six-month period under *Zadvydas* since the period had already expired. Petitioner was detained by ICE, at the latest, on November 26, 2025. (Doc. 1 at 5). Thus, Petitioner's six-month period under *Zadvydas* ended on May 25, 2026. But Petitioner's transport to the border and subsequent refusal to depart to Mexico occurred on May 29, 2026. (Doc. 4 at 2; Doc. 4-6 at 1). There effectively was no time left to toll because the six-month period had already expired before Petitioner's transport to the US-Mexico border.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2018, and he was re-detained in Fall 2025. (Doc. 1 at 5; Doc. 4-2 at 2; Doc. 4-4 at 1, 5–7). He contends that "ICE has not produced new travel documents, evidence of acceptance by a receiving country, scheduled removal arrangements, or other evidence demonstrating that removal has become significantly likely." (Doc. 1 at 7). Petitioner has now been detained for, at least, more than eleven months yet

ICE still has been unable to remove him. (Doc. 1 at 5). Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The Federal Respondents assert that Petitioner's "removal is significantly likely to occur in the reasonably foreseeable future once Petitioner[] cooperates." (Doc. 4 at 1). However, they do not detail any plans to remove him, let alone state that any such plans exist. (*See generally* Doc. 4). Petitioner now has been in ICE custody for over eleven months, at least—more than five months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably

foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. The Warden's motion to dismiss (Doc. 6) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *2–3 (M.D. Fla. Apr. 14, 2026).
2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[3] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.
3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

[3] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

**DONE AND ORDERED** in Jacksonville, Florida on October 27, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Miguel Alejandro Montejo Vega
Counsel of Record